UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMIR ANNABI,

    Plaintiff,

v.

LIVE NATION WORLDWIDE, INC., et al.,

    Defendants.

_____/

Case No. 1:20-cv-122

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Samir Annabi fell off a stage at Defendants' concert venue and suffered multiple injuries. He sues Defendants Live Nation Worldwide, Inc. and "20 Monroe Bldg. Co. Ltd. Partn.," who jointly own the venue. (Compl., ECF No. 1.) Plaintiff claims that they were negligent for, among other things, failing to maintain their premises in a reasonably safe condition. Before the Court is Defendants' motion for summary judgment (ECF No. 26). For the reasons herein, the Court will deny the motion.

### I. BACKGROUND

The following is a summary of the evidence when viewed in the light most favorable to Plaintiff. Annabi worked as a "runner" for Earl Simmons, a rap artist and entertainer known as "DMX." As a runner, Annabi's duties included: finding the location of the green room[1] at a venue and assessing its amenities before a performance; ensuring that DMX's belongings were packed in a backpack; bringing towels onstage for DMX during the performance; and bringing clothing,

---

[1] A green room is a lounge in a theater where performers can relax when they are not onstage.

sunglasses, and cologne for DMX to use after a performance. (Annabi Dep. 17, 74, ECF No. 28-7.)

DMX was scheduled to perform at Defendants' venue in Grand Rapids, Michigan, on the evening of May 2, 2019. Annabi and the rest of DMX's crew arrived at the venue that day earlier than Defendants expected, around 2:15 pm. Annabi got off the tour bus and went to the venue entrance, intending to check out the green room. Two women were there, selling tickets. He told them that he was with DMX, showed them his credentials, and asked to speak with the manager. One of the women, an employee of Defendants, went inside to look for the manager. After a few minutes, she came back and told Annabi that the manager was busy. He asked for someone to take him to the green room, but the woman told him that she was not allowed to leave her post. Instead, she gave him directions on how to get to the green room. (*Id.* at 32.) She told him to "go straight up onto the stage and then make a left and the door will be . . . along the right side." (*Id.* at 33.) She pointed at the stage and told him, "When you get up on the stage just make a left and continue walking and you'll see the green room and it will be to your right." (*Id.* at 34.) These directions violated Defendants' policies in its employee handbook, which required an employee to accompany Annabi to his desired destination. (*See* Barsoum Dep. 15, 19, ECF No. 28-8.)

Annabi followed the employee's instructions. He began by walking toward the stage, which is raised four feet above floor level. He found the stairs leading up to the middle of the stage. Most of the lights in the building were on and he could see where he was walking, but the stage was relatively dark because the stage lights were off. (Annabi Dep. 35-36.) He walked up the stairs and then turned left, per the directions given to him. He did not see any signs directing him to a green room.

The stage was surrounded on the sides and back by black, floor-to-ceiling curtains. As Annabi kept walking, he reached the curtains on the left side of the stage. He put his hand out to feel for a wall or railing behind the curtain, but there was no railing or wall. Most of the edge of the stage at the sides and back was surrounded by a railing behind the curtain, but not at the place where Annabi was standing. Because he did not feel anything through the curtain, Annabi thought that the stage extended at least a few more feet. (*Id.* at 89.) In fact, he had reached the edge of the stage.

As Annabi leaned forward to walk through the curtains, he stepped off the stage and fell. He dropped four feet and landed on several large metal gas canisters, breaking multiple ribs, puncturing a lung, lacerating his spleen, and fracturing his spine. Some of those injuries have left permanent damage.

Annabi claims that his injuries are the result of Defendants' negligence. Specifically, he contends that Defendants (1) maintained a premises in an unreasonably dangerous condition by having an open-sided stage concealed by a dark curtain without a guardrail or warning; (2) failed to warn Plaintiff of a dangerous and hazardous condition on their premises by posting signs, putting up guardrails, or cordoning off the area where Plaintiff fell; (3) failed to provide Plaintiff a safe and nonhazardous route on its premises; and (4) failed to provide adequate lighting on the stage for the benefit of foreseeable invitees like Plaintiff. Defendants move for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is not

an opportunity for the Court to resolve factual disputes. *Id.* at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### III. PREMISES LIABILITY

"A claim based on the condition of the premises is a premises liability claim." *Finazzo v. Fire Equip. Co.*, 918 N.W.2d 200, 205 (Mich. Ct. App. 2018). "To prevail on a premises-liability claim, plaintiff[] must establish that defendants owed [him] a duty of care." *Est. of Livings v. Sage's Inv. Grp., LLC*, No. 159692, 2021 WL 2672308, at *5 (Mich. June 30, 2021). "The duty element represents the legal obligation that arises from the relationship between the parties." *Id.*

There are three "categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee." *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000). "Each of these categories corresponds to a different standard of care that is owed to those injured on the owner's premises." *Id.*

<u>Trespassers</u>. "A 'trespasser' is a person who enters upon another's land, without the landowner's consent." *Id.* A trespasser also includes someone who has permission to enter the property, but who exceeds the scope of that permission by venturing into an area where they are not invited or permitted. *See Constantineau v. DCI Food Equip., Inc.*, 491 N.W.2d 262, 264 (Mich. Ct. App. 1992). "The landowner owes no duty to the trespasser except to refrain from injuring him by wilful and wanton misconduct." *Stitt*, 614 N.W.2d at 91 (quotation marks omitted).

<u>Licensees</u>. "A 'licensee' is a person who is privileged to enter the land . . . by virtue of the possessor's consent." *Id.* "A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have

4

reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Id.* at 91-92.

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

*Blackwell v. Franchi*, 914 N.W.2d 900 (Mich. 2018) (quoting *Preston v. Sleziak*, 175 N.W.2d 759, 765 (Mich. 1970)).

<u>Invitees</u>. "An 'invitee' is 'a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and [to] make [it] safe for [the invitee's] reception." *Stitt*, 614 N.W.2d at 92 (quoting *Wymer v. Holmes*, 412 N.W.2d 213, 215 n.1 (Mich. 1987)). "[I]nvitee status is commonly afforded to persons entering upon the property of another for business purposes." *Id.*

"The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id.*

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves

5

against it; and (c) fails to exercise reasonable care to protect invitees against the danger.

*Id.*

## IV. ANALYSIS

### A. Plaintiff's Status: Trespasser, Licensee, or Invitee

Defendants argue that Annabi was, at best, a licensee because he entered the premises before the rest of the crew, searching for the green room. But it is not clear why the timing of his entrance makes a difference. According to Annabi's testimony, he was performing his job by inspecting the facilities available for DMX before his performance. Thus, a jury could conclude that he was assisting with preparations for the concert to be held at the venue that evening, which means that there was a business purpose for his presence in the building. That purpose indicates that his status was that of an invitee. At the very least, there is a question of fact as to whether Annabi was an invitee or licensee.

Defendants also argue that, even if Annabi initially entered the building as an invitee, he became a trespasser by "wandering around the stage without securing permission to do so in accordance with Defendants' policies and protocols." (Defs.' Br. 9, ECF No. 27.) According to Annabi, however, he was following the directions to the green room given to him by Defendants' employee. If so, he had permission to be at the side of the stage when he fell.

Defendants' reference to "policies and protocols" does not aid their argument because there is no evidence that Annabi was even aware of these policies (which were part of Defendants' employee handbook), let alone that they required anything *of him*. Indeed, according to Defendants, it was their own employee who violated these protocols by allowing Annabi to enter without escorting him. (*See* Barsoum Dep. 60.) Thus, Defendants' argument that Annabi was a trespasser is not persuasive.

Accordingly, Defendants' motion fails to the extent it relies on the notion that they did not have a duty of care to Annabi because he was a trespasser. Viewing the evidence in a light most favorable to Annabi, a reasonable jury could conclude that he was an invitee.

### B. Open and Obvious Danger

Defendants argue that, even if Annabi was an invitee, they did not have a duty to warn or protect him from the danger he faced because that danger was "open and obvious." "The possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012) (quoting *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 (Mich. 1992)).

> Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an *objective standard*, calling for an examination of "the objective nature of the condition of the premises at issue."

*Id.* at 94-95 (footnotes omitted, quoting *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 390 (Mich. 2001)).

In some cases, there may be "special aspects" of an open and obvious hazard that make the risk of harm so "unreasonable" that the possessor of the premises must take "reasonable steps" to protect the invitee from that risk. *Id.* at 95. This "narrow" exception "recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature." *Id.* at 95-96.

According to Defendants, the danger to Annabi was open and obvious because there was sufficient lighting in the building for him to see where he was going. Also, he saw the curtain and continued walking, despite being unsure of what was on the other side.

7

A reasonable jury could reach a different conclusion. A curtain hanging at the side of a stage does not clearly warn a person that there is a significant drop on the other side. According to Annabi, he thought that he was walking to another part of the stage. Defendants have not pointed to undisputed evidence that would have made it obvious to an average person upon casual inspection that the stage ended where the curtain was located, or that there was some other risk to passing through the curtain. Indeed, in this case, a jury could conclude that Annabi took reasonable measures by determining that there was no wall or guardrail blocking his way (as would have been the case at a different part of the stage edge). Thus, Defendants' reliance on the open and obvious exception is unavailing.

## V. CONCLUSION

In summary, Annabi's evidence suffices to create genuine questions of fact about whether Annabi was present in the building as an invitee and whether, in light of that status, Defendants breached their duty of care to warn him of hazards and/or make the premises safe. Accordingly, Defendants' motion will be denied.

An order will enter consistent with this Opinion.


Dated:   October 7, 2021                    /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            UNITED STATES DISTRICT JUDGE