UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

SAMIR ANNABI,

    Plaintiff,

v

LIVE NATION WORLDWIDE, INC.,
d/b/a 20 MONROE LIVE, a Foreign Corporation,
and 20 MONROE BLDG. CO. LTD PARTN,
A Michigan business entity,

    Defendants.

Case No: 1:20-cv-122

Hon. Hala Y. Jarbou

_____/

## DEFENDANTS' MOTION IN LIMINE REGARDING ECONOMIC DAMAGES

    Defendants Live Nation Worldwide, Inc. ("Live Nation") and 20 MONROE BLDG. CO. LTD ("20 Monroe") (together, "Defendants"), through their attorneys, Clark Hill PLC, hereby move *in limine* for an order barring Plaintiff, his witnesses, and his counsel, from testifying about, introducing evidence of, requesting damages for, or otherwise mentioning at trial, alleged lost income. In support of their Motion, Defendants rely on the accompanying Brief in Support of Defendants' Motion *in Limine* to exclude Plaintiff's anticipated testimony regarding alleged future economic damages.

    Pursuant to Local Rule 7.1(d), counsel for Defendants sought the concurrence of opposing counsel on November 23, 2021 explaining the nature of the Motion and its legal basis; concurrence has not been given.

                                                Respectfully submitted,

                                                CLARK HILL PLC

                                                By:   /s/*Maria A. Ruggirello*
                                                        Anthony A. Agosta (P57355)
                                                        Maria A. Ruggirello (P82264)

500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
aagosta@clarkhill.com
mruggirello@clarkhill.com
Attorneys for Defendants

Date:  November 23, 2021

**Error! Unknown document property name.**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

SAMIR ANNABI,

    Plaintiff,

                                       Case No: 1:20-cv-122

v

                                       Hon. Hala Y. Jarbou

LIVE NATION WORLDWIDE, INC.,
d/b/a 20 MONROE LIVE, a Foreign Corporation,
and 20 MONROE BLDG. CO. LTD PARTN,
A Michigan business entity,

    Defendants.
_____/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE REGARDING ECONOMIC DAMAGES**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

    Plaintiff's Accident ..........................................................................................................1

    Plaintiff's Employment with DMX .................................................................................3

    Defendant's Motion .........................................................................................................4

ARGUMENT .............................................................................................................................5

I.    PLAINTIFF'S TESTIMONY REGARDING ALLEGED FUTURE ECONOMIC DAMAGES SHOULD BE EXCLUDED BECAUSE SUCH TESTIMONY IS SPECULATIVE AND WITHOUT ANY REASONABLE BASIS IN FACT ....................5

    A.    Standard ................................................................................................................5

    B.    Courts Have the Authority to Entertain Motions in Limine and Should Grant Such Motions to Avoid Manifest Unfairness ...................................................5

    C.    Plaintiff's Anticipated Testimony Regarding Alleged Future Economic Damages Should be Excluded as it is Speculative, Having No Reasonable Basis in Fact ..........................................................................................................6

    D.    Virtually No Supporting Documents .....................................................................8

CONCLUSION ...........................................................................................................................9

CERTIFICATE OF COMPLIANCE .........................................................................................10

CERTIFICATE OF SERVICE ..................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Goodwin v. Ace Iron & Metal Co.*,
   376 Mich 360 (1965) ............................................................................................. 7

*Health Call of Detroit v Atrium Home & Health Care Services, Inc.*,
   268 Mich. App. 83 (2005) ..................................................................................... 7

*Imperial Colliery Co. v. Oxy USA Inc.*,
   912 F.2d 696 (4th Cir. 1990) ................................................................................. 5

*Luce v. United States*,
   469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) ............................................. 5

*Ringstaff v. Mintzes*,
   539 F. Supp. 1124 (E.D. Mich. 1982) ................................................................... 5

*U.S. v. 215.7 Acres of Land, More or Less, Situate in Kent County, State of Delaware*,
   719 F. Supp. 273 (D. Del. 1989) ........................................................................... 5

*U.S. v. Certain Land Situated in City of Detroit, Wayne County, State of Michigan*,
   547 F. Supp. 680 (E.D. Mich. 1982) ..................................................................... 5

*United States v. Buchanan*,
   207 F.3d 344 (6th Cir. 2000) ................................................................................. 5

*Willis v Ed Hudson Towing, Inc.*,
   109 Mich. App. 344 (1981) ............................................................................... 7, 9

**Rules**

FRE 103(c) ................................................................................................................... 5

FRE 401 ....................................................................................................................... 6

FRE 403 ....................................................................................................................... 6

FRE 602 ....................................................................................................................... 6

FRE 701 .................................................................................................................... 6, 8

FRE 702 ....................................................................................................................... 6

**Error! Unknown document property name.**

**Other Authorities**

Wright & Gold, *Federal Practice and Procedure: Evidence §6252*, p. 112 (1997) ...................... 6

Wright & Gold, *Federal Practice and Procedure: Evidence §6253*, pp. 116-117 (1997) ............. 6

iii

**Error! Unknown document property name.**

## INTRODUCTION

In this negligence action, Plaintiff Samir Annabi alleges he was injured on May 2, 2019, while working on the stage crew for musician DMX on the premises of Defendants' concert venue. Specifically, Plaintiff alleges he sustained injuries after he walked through a curtain located on the side of the stage and fell off the stage onto the floor. Plaintiff subsequently filed a complaint against Defendants on February 12, 2020, alleging negligence claims against Defendants based on theories of premises liability. To date, Plaintiff has yet to present any expert testimony, documents or evidence to support claims regarding lost future economic damages as a result of his alleged injuries. Thus, any assertion regarding Plaintiff's lost future economic damages is speculative and has no reasonable basis in fact. Thus, Plaintiff should not be allowed to ask the jury to pull numbers out of thin air where he has no reasonable excuse for not producing documents or evidence of lost income.

## STATEMENT OF FACTS

**Plaintiff's Accident**

From around April 2019 to May 2, 2019, Plaintiff worked as a "runner" on the stage crew for the American rap artist, Earl Simmons, known in the music industry as "DMX." **Exhibit A**, Plaintiff Dep Tr. 74:3-7. As a runner, Plaintiff's job duties generally included: bringing towels on stage for DMX, ensuring DMX's belongings were packed in his backpack, bringing clothes, sunglasses, and cologne for DMX to use after performing, and checking the green room. *Id.* at 17:16-24. On May 2, 2019, the date of the accident alleged in the Complaint, Plaintiff arrived at Defendants' concert venue located in Grand Rapids, Michigan, to work as a runner in advance of a DMX concert scheduled for that same evening. Plaintiff arrived at the venue earlier than Defendants originally anticipated, around 2:15 in the afternoon, on the tour bus with the rest of the

crew. **Exhibit B,** S. Barsoum Dep Tr. 47:24-48:5. Plaintiff was the first to seek entry to the venue, attempting to locate a restroom or the green room. **Ex. A** at pp. 25:3-16 and 32:1-6, **Ex. B** at pp. 49:25-50:6; 64:3-17; **Exhibit C**. Defendants' former employee, Brooke, opened the door for Plaintiff and allowed him into the venue without first checking him in and escorting him to where he wanted to go—which are both requirements under Defendants' protocols. **Ex. B** at p. 60:4-22. Brooke was terminated shortly after the date of the accident, as a result of violating the protocols and procedures put in place by Defendants. *Id.* at p. 72:20-73:9.

According to Plaintiff, upon entering the venue, Brooke instructed him to walk toward the stage and make a left to get to the restroom. **Ex. A**, at p. 34:4. The lights were on in the venue as Plaintiff proceeded toward the stage, and Plaintiff specifically testified that he was able to see clearly where he was going in the illuminated room. *Id.* at p. 35:13-18. Once Plaintiff got onto the stage, he testified that he saw a black curtain hanging on the left side of the stage. *Id.* at p. 37:8-9. "This was the only spot [he] was looking because he was walking in that direction." *Id.* at p. 37:12-13. In walking up the stage, Plaintiff apparently ignored the door located next to the stairs leading up to the stage clearly labeled "Backstage." **Exhibit D.**

As Plaintiff approached the curtain, he "stuck [his] hand out to see [if there was] a wall or a rail or something, and as [he] was walking, [he] just fell." **Ex. A** at p. 38:16-19. Plaintiff testified that he fell no more than four (4) feet, which is the height of the stage from the floor. **Ex. B** at p. 24:8-10; **Ex. A** at p. 41:5-8. Plaintiff further testified that through his career in the music industry, he is familiar with and has previously encountered stages with curtains hanging on the side of the stage, as was the case here. **Ex. A** at p. 78:6-9. However, despite seeing the curtains in the well-lit venue, Plaintiff decided to "push[] forward [through the curtain] with [his] hand and [take a step] and that's when [he] f[e]ll." *Id.* at p. 79:6-8.

**Plaintiff's Employment With DMX**

Plaintiff was employed by Dogz4Life, the company in which he worked as a runner for DMX, from April 1, 2019 through the date of Plaintiff's alleged injury—May 2, 2019. **Ex. A** at pp. 19:14-20:16. The tour for which Plaintiff was employed ended just eight (8) days later, on May 10, 2019.[1] Prior to the tour, Plaintiff was working as an unpaid intern with Dogz4Life. **Ex. A** at p. 71:15-23. Plaintiff testified that he is unsure of how much money he received in total payments from Dogz4Life during his employment, or how much he would have made had he remained on the tour for the final week. **Ex. A** at p. 73:12-16. In addition to this testimony, Plaintiff failed to produce any records reflecting his income and/or taxes, despite Defendants' requests for such documentation. **Exhibit E**, Plaintiff's Responses to Defendants' Discovery Requests. Specifically, Defendants requested that Plaintiff produce his "federal income tax returns and W2 forms for the tax years 2015 through the present." Plaintiff did not object to Defendants' request or produce any responsive documents, but rather, stated that he "has no documents in his possession, custody or control." **Ex. E.** Defendants also requested that Plaintiff produce "all bills, statements of account, invoices, receipts, canceled checks, and correspondence that evidence alleged losses for which [he] seek[s] recovery in this litigation." **Ex. E.** Again, Plaintiff did not object or produce any responsive documents; he merely responded, "none." **Ex. E.**

Through Dogz4Life, Plaintiff also receives worker's compensation in an amount of $904.00 per week. **Ex. A** at pp. 88:17-19; 10:19-11:7. Plaintiff never applied for unemployment benefits following his accident. **Ex. A** at p. 22:9-11. Plaintiff further testified, that since the beginning of the COVID-19 pandemic, he has remained quarantined in his home, as he was

---

[1] DMX's "It's Dark and Hell is Hot" tour dates were scheduled from March 8, 2019 through May 10, 2019. *See* https://www.vividseats.com/blog/DMX-tour-dates.

determined to be high risk.  **Ex. A** at p. 68:13-14.  Specifically, Plaintiff testified that he is not working right now, as the music industry has been shut down due to the pandemic.  **Ex. A** at p. 20:15-23.

**<u>Defendants' Motion</u>**

Plaintiff has no evidence of future economic losses.  Plaintiff receives worker's compensation through his former employer, Dogz4Life, and neglected to apply for unemployment benefits at his own volition.  Plaintiff is currently unemployed, but admits his unemployment is solely the result of the COVID-19 pandemic and Plaintiff's high-risk label, which requires him to quarantine at home.  **Ex. A** at pp. 68:13-21.  Further, as previously noted, prior to Plaintiff's accident, Plaintiff's employment with Dogz4Life was already near termination—as the tour was scheduled to end only one week later.  Next the pandemic hit, and then DMX died on April 9, 2021; Plaintiff therefore would not have continued touring with this crew after that time, regardless of his health status or the pandemic, and would not have been subject to any additional pay or promotion opportunities.  To date, and despite Defendants' discovery requests to Plaintiff seeking Plaintiff's tax returns and W2 forms for the last several years—Plaintiff has failed to produce <u>any</u> documentation reflecting past, present, or potential future income.  Plaintiff also produced <u>zero</u> "bills, statements of account, invoices, receipts, canceled checks, and correspondence that evidence alleged losses for which [he] seek[s] recovery in this litigation."  **Ex. E.**

However, in an apparent attempt to circumvent this absence of future economic damages, Defendants anticipate that Plaintiff will allege that due to his injury he no longer is eligible to work and make an income.  Plaintiff's testimony would be highly speculative and has no reasonable basis in fact.  No-one has testified that Plaintiff's injury has rendered him incapable of performing the duties of a "runner" in the music industry, for DMX or otherwise—and Plaintiff himself has

4

produced no documentary evidence to support such a contention.  Under these circumstances, Plaintiff's testimony regarding alleged future economic losses should be excluded.  Defendants are therefore filing the present motion to exclude Plaintiff's testimony regarding alleged future economic damages, or any other evidence that is equally incapable of factual support.

## ARGUMENT

I. **PLAINTIFF'S TESTIMONY REGARDING ALLEGED FUTURE ECONOMIC DAMAGES SHOULD BE EXCLUDED BECAUSE SUCH TESTIMONY IS SPECULATIVE AND WITHOUT ANY REASONABLE BASIS IN FACT**

   **A. Standard**

Rulings regarding the admissibility of evidence are within the trial court's sound discretion. *Ringstaff v. Mintzes*, 539 F. Supp. 1124, 1130 (E.D. Mich. 1982); *see also United States v. Buchanan*, 207 F.3d 344, 352-353 (6th Cir. 2000) (the 6th Circuit traditionally has reviewed a district court's ruling regarding the admissibility of evidence for an abuse of discretion).

   **B. Courts Have the Authority to Entertain Motions in Limine and Should Grant Such Motions to Avoid Manifest Unfairness**

Although the Federal Rules do not explicitly authorize *in limine* rulings, the Court may make such rulings pursuant to its inherent authority to manage the course of trials.  *U.S. v. 215.7 Acres of Land, More or Less, Situate in Kent County, State of Delaware*, 719 F. Supp. 273 (D. Del. 1989); *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *U.S. v. Certain Land Situated in City of Detroit, Wayne County, State of Michigan*, 547 F. Supp. 680 (E.D. Mich. 1982); and FRE 103(c).  In addition, the Court can make *in limine* rulings to avoid manifest unfairness.  *Imperial Colliery Co. v. Oxy USA Inc.*, 912 F.2d 696 (4th Cir. 1990).

In the present matter, for all the reasons set forth below, the manifest unfairness and undue prejudice of allowing Plaintiff to offer any testimony or evidence regarding his alleged future economic damages requires such evidence to be excluded.

### C. Plaintiff's Anticipated Testimony Regarding Alleged Future Economic Damages Should be Excluded as it is Speculative, Having No Reasonable Basis in Fact

Trial courts must examine the admissibility of opinion testimony by lay witnesses within the context of Federal Rule of Evidence 701, which provides:

> If the witness is not testifying as an expert, testimony in the form of opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Advisory Committee Notes regarding this evidentiary rule explain that the rule's first requirement, that lay witness opinions or inferences must be rationally based on the perception of the witness, is the "familiar requirement of first-hand knowledge or observation." This requirement ensures that the testimony is obtained from the most reliable source of the information. The Notes further explain that the rule's second requirement, that lay opinion testimony is helpful in resolving issues, requires the exclusion of testimony that merely attempts to introduce "meaningless assertions which amount to little more than choosing up sides." Combined, these requirements "bring into the evaluation of lay opinion testimony the principles and policies underlying Rule 602, Rule 401, and Rule 403.[2] In short, Rule 701 represents a confluence of some of the most fundamental building blocks of modern evidence law." Wright & Gold, *Federal Practice and Procedure: Evidence §6252*, p. 112 (1997).

---

[2] Accordingly, even if the Court concludes that Plaintiff's anticipated testimony does not contain opinions and inferences, the testimony still must be rationally based on perception in that the testimony must be relevant under FRE 401 and the testimony must satisfy the personal knowledge requirement of FRE 602. Moreover, the testimony still must be helpful in that if the testimony is not probative, and instead is merely a waste of time, it should be excluded under FRE 403. Thus, regardless of the form of Plaintiff's testimony, similar tests for admissibility apply whether or not the testimony contains opinions or inferences. *See,* Wright & Gold, *Federal Practice and Procedure: Evidence §6253*, pp. 116-117 (1997).

6

**Error! Unknown document property name.**

"[R]emote, contingent, and speculative damages cannot be recovered in Michigan in a tort action." *Health Call of Detroit v Atrium Home & Health Care Services, Inc.*, 268 Mich. App. 83, 96 (2005). Although damages are not speculative merely because they are not calculated with mathematical precision, "[a] plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable." *Id.* An "approximation" of damages is sufficient only if "a reasonable basis for computation exists." *Id.*

Leeway for the lack of mathematical precision may apply when the circumstances of the case itself make precision unattainable, particularly when a "defendant's own act causes the imprecision." *Willis v Ed Hudson Towing, Inc.*, 109 Mich. App. 344, 350 (1981) citing *Goodwin v. Ace Iron & Metal Co.*, 376 Mich 360, 368 (1965). Case law does not suggest, however, that such leeway is meant to protect a plaintiff where the fact and amount of alleged damages require guesswork due to his/her own failure to keep standard business and tax records, or to even prepare them in the first place.

To allow Plaintiff in this matter to testify regarding alleged future economic damages would be an abuse of discretion for several reasons. First, the testimony should be excluded because it is not based on first-hand knowledge. Plaintiff cannot state with any certainty that his alleged injuries prevent him from performing his job in the music industry. There simply are no facts in the record to support such an opinion. Plaintiff has failed to produce any documents that reflect his past or present income or potential future economic losses. Rather, it's apparent that Plaintiff's inability and/or refusal to work stems from (1) the COVID-19 pandemic shutting down the music industry, (2) Plaintiff's choice to quarantine at home given his status as high-risk, (3) the fact that DMX's tour was scheduled to end a week after Plaintiff's accident anyways, and (4)

7

DMX's death.  Plaintiff's testimony therefore would be mere speculation without any reasonable basis in fact.

Plaintiff's anticipated testimony also may mislead the jury.  A jury may be lulled by a convincing Plaintiff into accepting his unfounded opinion, even if cross-examination serves to highlight the speculative nature of Plaintiff's testimony.  Without any factual basis, Plaintiff's testimony amounts to a meaningless assertion, and is more prejudicial than probative.

Plaintiff's opinion testimony regarding his alleged inability to work and earn an income both fails to be helpful and violates the "rationally based" requirement.   It is precisely testimony of this nature that was intended to be excluded under FRE 701.  For these reasons, Plaintiff's testimony regarding his future economic damages, or any other equally speculative testimony, should be excluded.

### D.  Virtually No Supporting Documents

Plaintiff could not testify how much he made while working for DMX.  He could not even provide an estimate.  Further, Plaintiff has produced virtually nothing tangible to allow Defendants to test his self-serving testimony, despite having been given ample time.

On April 21, 2020, Plaintiff served his initial disclosures and failed to identify or produce any documents to support his claims for economic damages. **Exhibit F.**  In May 2020, Defendants requested Plaintiff to produce "[a]ll bills, statements of account, invoices, receipts, canceled checks, and correspondence that evidence alleged losses for which you seek recovery in this litigation." **Ex. E.**  Plaintiff's response was "none." **Ex. E.**

A key category of documents that Defendants requested was Plaintiff's tax returns for 2015 to the present. **Ex. E.**  Plaintiff's response was "Plaintiff has no documents in his possession, custody or control." **Ex. E.**  To date, Plaintiff has not supplemented these discovery responses,

8

and Plaintiff has failed to produce any evidence of his earning through cancelled checks, pay stubs or tax returns. Accordingly, neither the circumstances of this case, nor Defendants' actions have caused Plaintiff's proof problems here. *Willis, supra,* at 350. Instead, Plaintiff's problems arise solely from his failure to produce documents to support his alleged economic losses. As a result, Plaintiff should be barred from advancing a lost income claim that would depend on speculation and conjecture attributable only to himself.

## **CONCLUSION AND RELIEF REQUESTED**

The Rules of Evidence were established in part to ensure that unreliable and irrelevant evidence not be admitted during trial. In the present matter, Defendants anticipate that Plaintiff will testify that due to his alleged injuries, he is no longer capable of securing work and earning an income. Plaintiff's opinion, however, is not based upon any facts in the record in this matter. Instead, Plaintiff's self-serving opinion is simply an attempt to create future economic damages where none exist. The Rules of Evidence were adopted to exclude such unreliable and speculative testimony.

For these reasons, Defendants respectfully request an Order excluding Plaintiff's anticipated testimony regarding his alleged future economic damages, or any other equally speculative testimony regarding this issue.

Respectfully submitted,

CLARK HILL PLC

By: /s/*Maria A. Ruggirello*
Anthony A. Agosta (P57355)
Maria A. Ruggirello (P82264)
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
aagosta@clarkhill.com

9

**Error! Unknown document property name.**

mruggirello@clarkhill.com
Attorneys for Defendants

Date:  November 23, 2021

# CERTIFICATE OF COMPLIANCE

Pursuant to W.D. Mich. L. Civ. R. 7.3(b)(i) and (ii), the undersigned certifies that the accompanying Brief in Support of Defendants' Motion *in Limine* Regarding Economic Damages contains 2,797 words, counted in Microsoft Word for Office 365.

*/s/ Maria A. Ruggirello*
Anthony A. Agosta (P57355)
Maria A. Ruggirello (P82264)
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
aagosta@clarkhill.com
mruggirello@clarkhill.com
Attorneys for Defendants

# CERTIFICATE OF SERVICE

I state that on November 23, 2021, the foregoing paper was filed with the Court via the ECF system which will send notification to all attorneys of record.

*/s/ Maria A. Ruggirello*
Anthony A. Agosta (P57355)
Maria A. Ruggirello (P82264)
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
aagosta@clarkhill.com
mruggirello@clarkhill.com
Attorneys for Defendants

**Error! Unknown document property name.**